PER CURIAM.
 

 This appeal and cross-appeal arise out of a consolidated action disposing of several breach-of-contract claims and counterclaims. The contracts at issue govern the construction and sale of eighteen units within the Tranquil Harbour Development in Mexico Beach, Florida. In the trial court, the purchasers contended that the developer failed to comply with a contract provision requiring the timely completion and delivery of the units, and the developer contended that the purchasers breached by refusing to close when, in fact, the units were timely completed. The trial court ruled in favor of the purchasers as to seventeen units, but in favor of the developer as to one (Unit 111). The developer appealed,-and the purchasers of Unit 111 cross-appealed. We affirm the appeal without discussion and reverse the cross-appeal.
 

 On June 9, 2005, the developer and four purchasers entered into a subscription and purchase agreement governing the construction and closing of Unit 111. At some point, the agreement dated June 9, 2005, was changed to remove one purchaser and replace her with another person. On October 27, 2005, following a request by the new purchaser and the one who had been removed, the four original purchasers and the developer signed a new subscription and purchase agreement for Unit 111. The new agreement had the same terms as the original. On July 24, 2007, the City of Mexico Beach issued a Certificate of Occupancy for Unit 111, and on February 15, 2008, the surveyor’s certificate required
 
 *86
 
 under section 718.104(4)(e), Florida Statutes (2004), was recorded for the building in which Unit 111 is located.
 

 In the trial court, the purchasers of Unit 111 sought the return of their deposit money pursuant to Paragraph 16 of the parties’ contract. Paragraph 16, which governs completion and delivery of the unit, provides as follows:
 

 COMPLETION. Developer covenants to complete the unit that is the subject of this agreement within Two (2) years of the date of this agreement. Such two (2) year period may, however, be extended due to acts of God, inability to obtain materials or any other events constituting an impossibility of performance under Florida Law. If developer is unable to deliver the completed unit by said date, then purchaser, in addition to any other rights and remedies in law or equity, shall be entitled to demand a return of the purchaser’s deposit hereunder and developer shall be obligated to promptly return the deposit or purchaser shall have the right to seek specific performance or any other remedy, if purchaser is entitled to such remedies by operation of law.
 

 The trial court rejected the purchasers’ argument that the unit was not timely completed, finding that the October 27 contract was a novation and that the Certificate of Occupancy signaled the completion of the unit. Accordingly, the trial court rendered judgment for the developer as to Unit 111.
 

 In their cross-appeal, the purchasers challenge the finding that the October 27 contract was a novation and the ruling that the Certificate of Occupancy is the instrument signaling completion of the unit for the purposes of enforcing Paragraph 16. Given the plain language of the parties’ contract and the Florida statutes governing the construction and sale of condominiums, we hold that the trial court erred as a matter of law in using the Certificate of Occupancy as the controlling instrument for determining compliance with Paragraph 16’s deadline. The interplay between the contract and the governing statutes leads us to further hold that the recording of the surveyor’s certificate of substantial completion was the relevant event. This holding renders the novation issue moot; regardless of whether the operative contract was the June 9 document or the October 27 document, the developer failed to meet its obligations under Paragraph 16 and, thus, is required to return the purchasers’ deposit and any interest earned thereon.
 

 The Legislature has enacted statutes specifically for the purpose of establishing “procedures for the creation, sale, and operation of condominiums.” § 718.102, Fla. Stat. (2004). Because a condominium is strictly a creature of statute, the language of the statutes in effect on the date of the declaration of condominium
 
 [1]
 
 “is as controlling as if engrafted onto” a contract governing its purchase and sale.
 
 Suntide Condo. Ass’n, Inc. v. Div. of Fla. Land Sales & Condos., Dep’t of Bus. Regulation,
 
 463 So.2d 314, 317 (Fla. 1st DCA 1984). Therefore, we must construe the requirements of Paragraph 16 in light of Florida’s condominium statutes. The dispositive issue in this case turns on our construction of the parties’ contract and the governing statutes. Accordingly, our review is de novo.
 
 See Hill v. Davis,
 
 70 So.3d 572, 575 (Fla.2011) (statutory construction);
 
 Rose v. Steigleman,
 
 32 So.3d 644, 645 (Fla. 1st DCA 2010) (contract interpretation).
 

 
 *87
 
 The purchasers correctly contend that section 718.104(4)(e), Florida Statutes (2004), dictates the date for determining compliance with Paragraph 16. Section 718.104(2) provides that a condominium is created by recording a declaration in the public records. It then sets forth the requirements of a valid declaration. § 718.104(2). If the construction of a condominium is not substantially completed when the declaration is recorded, the developer is required to state this fact in the declaration and, once the condominium is substantially completed, amend the declaration to include a certifícate confirming substantial completion. § 718.104(4)(e). This certificate is issued by a surveyor or mapper and provides the following assurance:
 

 that the construction of the improvements is substantially complete so that the material, together with the provisions of the declaration describing the condominium property, is an accurate representation of the location and dimensions of the improvements and so that the identification, location, and dimensions of the common elements and each unit can be determined from these materials.
 

 § 718.104(4)(e).
 

 Section 718.104(4)(e) further provides the following mandate concerning when a “[c]ompleted unit” may be delivered to a purchaser:
 

 Completed units within each substantially completed building in a condominium may be conveyed to purchasers, notwithstanding that other buildings in the condominium are not substantially completed, provided that all planned improvements, including, but not limited to, landscaping, utility services and access to the unit, and common-element facilities serving such building, as set forth in the declaration, are first completed and the declaration of condominium is first recorded and provided that as to the units being conveyed there is a certificate of a surveyor and mapper as required above, including certification that all planned improvements, including, but not limited to, landscaping, utility services and access to the unit, and common-element facilities serving the building in which the units to be conveyed are located have been substantially completed, and such certificate is recorded with the original declaration or as an amendment to such declaration.
 

 Under the plain language of section 718.104(4)(e), a surveyor’s certificate of substantial completion must be recorded before a condominium’s “[c]ompleted units ... may be conveyed to purchasers.” “Convey” is a synonym of “deliver.”
 
 See Black’s Law Dictionary
 
 334 (7th ed. 1999) (defining “convey” as “[t]o transfer or deliver (something, such as a right or property) to another, esp. by deed or other writing”). Thus, as a matter of law, the developer was not able to deliver the completed Unit 111 until the surveyor’s certificate of substantial completion was recorded.
 

 The developer argues that the certificate of substantial completion is not the governing document because the issue is when the unit was completed, not when it was eligible for delivery. We disagree, and we conclude that the purchasers’ argument to the contrary was preserved. Under the plain language of Paragraph 16, the terms “complete” and “deliver” are related in that the duty required to be performed within two years is the delivery of a completed unit. Although the trial court’s finding that the unit was actually complete as of the date of the Certificate of Occupancy may be correct, the conclusion that this certificate established the controlling date under Paragraph 16 is incorrect.
 
 *88
 
 Unit 111 was not eligible to be delivered until the certifícate of substantial completion was recorded on February 15, 2008, months after the deadline for completion, even under the October 27 contract. For this reason, we reverse the final judgment as to Unit 111 and remand for entry of an order consistent with this opinion.
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 BENTON, C.J., ROWE and RAY, JJ., concur.
 

 [1]
 

 . The State approved the condominium documents in April 2005.